Mary Jo O'Neill, AZ Bar #005924
Andrea Baran, MO Bar # 46520
T. Diana Chen, AZ Bar # 021706
**EQUAL EMPLOYMENT OPPORTUNITY**
**COMMISSION, Phoenix District Office**
3300 N. Central Ave., Suite 690
Phoenix, AZ  85012
Telephone: (602) 640-5016
Fax: (602) 640-5009
Email:   mary.oneill@eeoc.gov
         andrea.baran@eeoc.gov
         diana.chen@eeoc.gov

Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Equal Employment Opportunity Commission, | ) )  Case No.: |
| Plaintiff, | ) ) |
| vs. | ) )  **COMPLAINT** |
| Community Provider of Enrichment Services, Inc., | ) )  (Jury Trial Requested) |
| Defendant. | ) ) ) ) |

## INTRODUCTION

This is an action under Title I of the Americans with Disabilities Act of 1990 ("ADA") and Title I of the Civil Rights Act of 1991 ("Civil Rights Act") to correct unlawful employment practices on the basis of disability and to provide appropriate relief in the public interest and to Lisa Parra, Rick Siego, and other qualified hearing-impaired job applicants who were adversely affected by such practices.  As alleged with greater particularity in paragraphs 7-14 below, Defendant Community Provider of Enrichment Services, Inc. ("CPES") violated the ADA and Title I of the Civil Rights Act when it refused to hire Ms. Parra, Mr. Siego, and other qualified hearing-impaired job applicants because of their disability, hearing impairment. In addition, CPES failed to provide

reasonable accommodations to Mr. Siego and other hearing-impaired job applicants in violation of the ADA.

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.  This action is authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-5(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.      The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Arizona.

## PARTIES

3.      Plaintiff, the Equal Employment Opportunity Commission (the "Commission" or "EEOC") is the agency of the United States of America charged with the administration, interpretation and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4.      At all relevant times, Defendant Community Provider of Enrichment Services, Inc. ("CPES" or "Defendant"), an Arizona corporation, has continuously been doing business in the State of Arizona and the city of Tucson and has continuously had at least 15 employees.

5.      At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Section 101(5) of the ADA, 42 U.S.C.§ 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. §§ 2000e(g) and (h).

6.      At all relevant times, Defendant has been a covered entity within the meaning of Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

**STATEMENT OF CLAIMS**

7.     On July 11, 2008, more than thirty days prior to the institution of this lawsuit, Lisa Parra filed a charge of discrimination against the Defendant with the Arizona Civil Rights Division under the Arizona Civil Rights Act and with the United States Federal Equal Employment Opportunity Commission (EEOC) under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. (ADA).

8.     Since at least May 2007, Defendant has had a policy of not hiring or employing hearing-impaired persons as Direct Support Providers (DSPs), and has had a written job description for Direct Support Providers (DSPs) requiring them to be able to "hear" clients in order to monitor clients' activities.

9.     This policy is a qualification standard that screens out or tends to screen out otherwise qualified applicants with disabilities, specifically hearing impairment, in violation of Section 102(a) of Title I of the ADA, 42 U.S.C. §12112(b)(6).

10.     Since at least May 2007, Defendant has engaged in the following additional unlawful employment practices at its Arizona facilities in violation of Section 102(a) Title I of the ADA, 42 U.S.C. §12112:

      a.     Defendant failed to hire Lisa Parra, Rick Siego, and other hearing-impaired persons for DSP positions because of their disability.  The facts supporting this claim include but are not limited to:

            i.     Lisa Parra is deaf and is substantially limited in at least one major life activity including, but not limited to, hearing.

            ii.     In February 2008, Defendant had one or more vacant Direct Support Provider ("DSP") positions at its Tucson location.

iii.  Ms. Parra has worked with developmentally disabled persons for many years and competently performed positions similar to CPES' DSP positions.

iv.  During her career, Ms. Parra has successfully worked with hearing and deaf individuals in group home settings and in respite settings. Prior to the events that give rise to this lawsuit, Ms. Parra had worked previously for CPES and left the Defendant's employment in good standing.

v.  In or around February 2008, Ms. Parra applied for a DSP position with CPES.

vi.  When Defendant's Human Resources Director, Marcia Ruttenberg, tried to reach Ms. Parra via telephone regarding her job application, Ms. Ruttenberg was advised that Ms. Parra had a hearing impairment.  Once advised of Ms. Parra's hearing impairment, Ms. Ruttenberg ended the call and never tried to contact Ms. Parra again.

vii.  After applying for the DSP position, Ms. Parra approached Defendant's Human Resources Director Marcia Ruttenberg in-person and the two discussed Ms. Parra's application for employment with CPES.

viii.  Ms. Ruttenberg advised Ms. Parra that Defendant did not hire deaf persons because of safety concerns and Defendant had experienced problems with deaf employees in the past.

ix.   In the DSP job description, CPES imposed a physical requirement of being able to "hear" consumers in order to monitor consumer activities.

x.   At no time did Ruttenberg inquire into the level or degree of Ms. Parra's deafness or discuss with Ms. Parra how she could perform the essential functions of the position with or without reasonable accommodation.

xi.   Despite Ms. Parra's extensive relevant employment experience and being a superior candidate for the DSP position, Defendant did not hire Ms. Parra for the DSP position because of her hearing impairment.

xii.   Ms. Parra was qualified for the DSP position and could perform the essential functions of the position with or without reasonable accommodations.

xiii.   Defendant never engaged Ms. Parra in an interactive process to determine whether she could perform the essential functions of the DSP position with reasonable accommodations.

xiv.   Upon information and belief, Defendant hired less qualified, non-hearing-impaired candidates to fill its open DSP positions.

xv.   Upon information and belief, Defendant has a policy of not exploring with deaf candidates whether they can perform the essential functions of the position for which they are applying with or without reasonable accommodations.

xvi.   Rick Siego is deaf and is substantially limited in at least one major life activity including, but not limited to, hearing.

xvii.   In February 2008, Defendant had one or more vacant Direct Support Provider ("DSP") positions at its Tucson locations.

xviii.   In or about February 2008, Mr. Siego attended an employment job fair event hosted by Defendant. During this event, Defendant accepted job applications for open positions and interviewed applicants.  During this event, Mr. Siego attempted to complete an application of the DSP position.

xix.   When she learned that Mr. Siego was deaf and had requested an ASL interpreter for his interview, Defendant's Human Resources Director, Marcia Ruttenberg, confiscated Mr. Siego's application, which he was still filling out, and told him that CPES would not hire him because he was deaf.

xx.   Later that day, Ms. Ruttenberg reluctantly allowed Mr. Siego to complete his application and be interviewed for a job.

xxi.   Defendant did not hire Mr. Siego.

xxii.   Mr. Siego was qualified for the DSP position and could perform the essential functions of the position with or without reasonable accommodation.

xxiii.   Upon information and belief, Defendant hired less qualified, non-hearing impaired candidates to fill its open DSP positions.

b.   Defendant failed to reasonably accommodate Rick Siego and other hearing-impaired persons by refusing to provide them with a qualified American

Sign Language (ASL) interpreter or otherwise reasonably accommodate their disability. The facts supporting this claim include but are not limited to the following:

i.  In or about February 2008, Mr. Siego attended an employment job fair event hosted by Defendant. During this event, Defendant accepted job applications for open positions and interviewed applicants.  During this event, Mr. Siego attempted to complete an application for the DSP position.

ii.  When it was learned that Mr. Siego was deaf and had requested an ASL interpreter for his interview, Defendant's Human Resources Director, Marcia Ruttenberg, confiscated Mr. Siego's application, which he was still filling out, and told him that CPES would not hire him because he was deaf.

iii.  Later that day, Defendant reluctantly allowed Mr. Siego to complete his application and be interviewed for a job.

iv.  Mr. Siego requested that Defendant provide an ASL interpreter during his interviews.  Defendant refused this request and offered no other solution to ensure that Mr. Siego could communicate clearly during his interviews.  Thus, Mr. Siego underwent an interview by a panel of interviewers who did not use sign language and who did not understand sign language.

12.  The effect of the practices complained of above was to deprive Ms. Parra, Mr. Siego, and other qualified hearing-impaired job applicants equal employment opportunities because of their disability.

13.    The effect of the practices complained of above was to deprive Mr. Siego and other qualified hearing-impaired job applicants reasonable accommodations.

14.    The unlawful employment practices complained of above were intentional and done with malice and/or reckless indifference to the federally-protected rights of Ms. Parra, Mr. Siego, and other qualified hearing-impaired job applicants.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A.    Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in unlawful employment practices which against or screen out or tend to screen out job applicants on the basis of disability.

B.    Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities, and which eradicate the effects of its past and present unlawful employment practices.

C.    Order Defendant to make whole Lisa Parra, Rick Siego, and other qualified hearing-impaired job applicants by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but no limited to rightful-place instatement or frontpay in lieu thereof.

D.    Order Defendant to make whole Lisa Parra, Rick Siego, and other qualified hearing-impaired job applicants by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in paragraphs 7-14 above, in amounts to be determined at trial.

E.    Order Defendant to make whole Lisa Parra, Rick Siego, and other qualified hearing-impaired job applicants by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of in paragraphs 7-

14 above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

      F.     Order Defendant to pay Lisa Parra, Rick Siego, and other qualified hearing-impaired job applicants, punitive damages for its malicious conduct and/or reckless indifference described in paragraphs 7-14 above, in amouts to be determined at trial.

      G.     Grant such further relief as the Court deems necessary and proper in the public interest.

      H.     Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by this complaint.

      Dated this 29th day of September, 2010.

P. DAVID LOPEZ
General Counsel

JAMES L. LEE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
1801 L Street, N.W.
Washington, D.C.  20507


s/Mary Jo O'Neill_____
MARY JO O'NEILL
Regional Attorney

s/ T. Diana Chen_____
T. DIANA CHEN
Trial Attorney

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Phoenix District Office
3300 N. Central Ave., Suite 690
Phoenix, AZ 85012

Attorneys for Plaintiff